IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DANIEL LEE SOX JR., <br><br> Plaintiff, <br><br> v. <br><br> TRUIST BANK, <br><br> Defendant. | Case No. 3:25-cv-935 <br><br> **COMPLAINT AND JURY TRIAL DEMAND** |

**COMPLAINT**

In this action, Plaintiff Daniel Lee Sox Jr. seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendant for its willful and/or negligent violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*., as described herein. Plaintiff brings this action on an individual basis, against Defendant Truist Bank ("Truist") for its violations of the EFTA and states as follows:

**PARTIES**

1. Plaintiff is a natural person residing in Belmont, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1693a(6). Plaintiff is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

2. At all relevant times, Plaintiff had a debit card account in his name administered by Defendant (hereinafter, "Plaintiff's Account" or the "Debit Card Account"). At all relevant times, Plaintiff's Account was established to hold funds used primarily for Plaintiff's personal use and/or household expenditures. At all relevant times, Plaintiff's Account was an "account" and constituted an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1).

1

3. Defendant Truist Bank ("Defendant" or "Truist") is a national bank with its principal place of business at 214 North Tryon Street, Charlotte, NC 28202, and is authorized to conduct business in the State of North Carolina, including within this District. At all relevant times, Defendant was a bank that held Plaintiff's Account. Defendant is a "financial institution" as that term is defined by 15 U.S.C. § 1693a(9). At all relevant times, Defendant is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

## JURISDICTION AND VENUE

4. This action arises out of Defendant's violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq*.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## **FACTS**

7. Around November 2024, while traveling out of state, Plaintiff used his debit card at a gas station.

8. Shortly after this transaction, Plaintiff began noticing fraudulent activities on his checking account.

9. Between October 15, 2024 and December 11, 2024, the following electronic funds transfers occurred and were unauthorized (collectively, the "Unauthorized Transactions"):

    (a)    Transaction Date: 10/15/2024
            Description: Visa Money Transfer Debit 10-11-24 Visa Direct NY 5054 Venmo's ClayPatzer
            Amount: $1,000.00

    (b)    Transaction Date: 10/15/2024
            Description: Debit Card Misc Debit Cash App*Dan Gleas 10-12-800-9691940 CA 5054

Amount: $300.00

(c) Transaction Date: 10/15/2024
Description: Debit Card Misc Debit Cash App*Dan Gleas 10-12-800-9691940 CA 5054
Amount: $200.00

(d) Transaction Date: 10/15/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-14-800-9691940 CA 5054
Amount: $400.00

(e) Transaction Date: 10/15/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-14-800-9691940 CA 5054
Amount: $200.00

(f) Transaction Date: 10/16/2024
Description: Debit Card Misc Debit Cash App*Chrissy K 10-15-800-9691940 CA 5054
Amount: $350.00

(g) Transaction Date: 10/16/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-15-800-9691940 CA 5054
Amount: $250.00

(h) Transaction Date: 10/17/2024
Description: Visa Money Transfer Debit 10-16-24 Visa Direct NY 5054 Venmo 'Lauren Mccall
Amount: $100.00

(i) Transaction Date: 10/18/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-18-800-9691940 CA 5054
Amount: $500.00

(j) Transaction Date: 10/21/2024
Description: Debit Card Misc Debit Cash App*Bertina 10-18-800-9691940 CA 5054
Amount: $100.00

(k) Transaction Date: 10/22/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-22-800-9691940 CA 5054
Amount: $250.00

(l) Transaction Date: 10/28/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-25-800-9691940 CA 5054
Amount: $700.00

(m) Transaction Date: 10/28/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-25-800-9691940 CA 5054
Amount: $1,100.00

(n) Transaction Date: 10/28/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-26-800-9691940 CA 5054
Amount: $500.00

(o) Transaction Date: 10/28/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-27-800-9691940 CA 5054
Amount: $300.00

(p) Transaction Date: 10/29/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 10-28-800-9691940 CA 5054
Amount: $500.00

(q) Transaction Date: 11/01/2024
Description: Zelle Payment To AdamCook Payment ID BBT266835118
Amount: $500.00

(r) Transaction Date: 11/04/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 11-01-800-9691940 CA 5054
Amount: $2,700.00

(s) Transaction Date: 11/04/2024
Description: Zelle Payment To AdamCook Payment ID BBT267474887
Amount: $500.00

(t) Transaction Date: 11/05/2024
Description: Zelle Payment To Michael Barcelona Payment ID BBT267706637
Amount: $400.00

(u) Transaction Date: 11/07/2024
Description: Zelle Payment To Michael Barcelona Payment ID

BBT268035941
Amount: $1,500.00

(v) Transaction Date: 11/12/2024
Description: Zelle Payment To Michael Barcelona Payment ID BBT268446364
Amount: $500.00

(w) Transaction Date: 11/12/2024
Description: Zelle Payment To Michael Barcelona Payment ID BBT268451190
Amount: $100.00

(x) Transaction Date: 11/12/2024
Description: Zelle Payment To Michael Barcelona Payment ID BBT268796825
Amount: $350.00

(y) Transaction Date: 11/13/2024
Description: Zelle Payment To AdamCook Payment ID BBT269233995
Amount: $300.00

(z) Transaction Date: 11/15/2024
Description: Zelle Payment To AdamCook Payment ID BBT269553305
Amount: $400.00

(aa) Transaction Date: 11/18/2024
Description: Zelle Payment To AdamCook Payment ID BBT269878104
Amount: $100.00

(bb) Transaction Date: 11/18/2024
Description: Zelle Payment To Chelsea Kennedy Payment ID BBT270230529
Amount: $1,000.00

(cc) Transaction Date: 11/25/2024
Description: Zelle Payment To AdamCook Payment ID BBT271402000
Amount: $200.00

(dd) Transaction Date: 11/25/2024
Description: Debit Card Misc Debit Cash App*DJ Gleaso 11-24-800-9691940 CA 5054
Amount: $500.00

(ee) Transaction Date: 11/26/2024
Description: Zelle Payment To Judy Woehrle Payment ID BBT271728537

      Amount: $500.00

  (ff)  Transaction Date: 11/27/2024
      Description: Zelle Payment To Judy Woehrle Payment ID BBT271943059
      Amount: $550.00

  (gg)  Transaction Date: 12/04/2024
      Description: Debit Card Misc Debit Cash App*Michael V 12-03 Oakland CA 5317
      Amount: $350.00

  (hh)  Transaction Date: 12/06/2024
      Description: Zelle Payment To Crt 21 Payment ID BBT274047694
      Amount: $2,500.00

  (ii)  Transaction Date: 12/09/2024
      Description: Visa Money Transfer Debit 12-06-24 Visa Direct NY 5054 Venmo 'Clay Patzer
      Amount: $2,500.00

  (jj)  Transaction Date: 12/09/2024
      Description: Debit Card Misc Debit Cash App*DJ Gleaso 12-09 Oakland CA 5317
      Amount: $500.00

  (kk)  Transaction Date: 12/09/2024
      Description: Debit Card Misc Debit Cash App*DJ Gleaso 12-09 Oakland CA 5317
      Amount: $500.00

  (ll)  Transaction Date: 12/11/2024
      Description: Zelle Payment To Zaria Leach Payment ID BBT274937168
      Amount: $1,000.00

10. These unauthorized and fraudulent transactions totaled over $12,000.

11. Plaintiff did not authorize the aforementioned transactions ("Unauthorized Transactions").

12. Plaintiff did not provide consent to any third party to withdraw and/or transfer funds from his Debit Card Account.

13. Plaintiff did not provide consent to Defendant to allow the withdrawal and/or

electronically transfer funds from Plaintiff's Account.

14. On or about January 15, 2025, Plaintiff received a notice of pending review and possible account restrictions. Later that same day, the account was officially blocked, and a notice was mailed to Plaintiff.

15. On or about July 30, 2025, Defendant sent Plaintiff a letter, stating that due to his failure to comply with the terms of the account ending in 9001, the balance had been accelerated to $30,729.37, and demand payment in full.

**Plaintiff Disputes the Unauthorized Transactions with Defendant**

16. On or about November 4, 2024, Plaintiff made his first dispute to Defendant.

17. On the same day, Defendant confirmed receipt of the claim and stating they would investigate.

18. By letters dated November 5, 2024, and November 17, 2024, Defendant denied the claim Plaintiff's claim in piecemeal.

19. On or about February 12, 2025, Plaintiff filed a police report online.

20. On or about April 14, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

21. On or about April 24, 2025, Plaintiff mailed a dispute letter to Defendant. The dispute was delivered on May 30, 2025.

22. On or about May 13, 2025, Plaintiff resent the dispute to Defendant since the delivery of the previous dispute took so long. That dispute was delivered on June 11, 2025.

23. On or about May 31, 2025, a merchant call was conducted to confirm Defendant's mailing address.

24. On or about June 5, 2025, Plaintiff mailed another dispute letter to Defendant. The

dispute was delivered on June 9, 2025.

25. Specifically, Plaintiff notified Defendant that he believed there was an error or otherwise unauthorized electronic fund transfers pertaining to the Unauthorized Transactions from Plaintiff's Account.

26. Plaintiff provided Defendant with notice of the circumstances as to why the transfer of funds in connection with the Unauthorized Transactions by an unknown third party from October 15, 2024 and December 11, 2024, was either erroneous or otherwise unauthorized as follows:

   (a) Plaintiff never authorized the electronic fund transfers from Plaintiff's Account;

   (b) Plaintiff never provided the unknown third party with permission, consent, or authority to electronically transfer funds from Plaintiff's Account; and,

   (c) Plaintiff did not initiate any of the transactions in connection with the Unauthorized Transactions from October 15, 2024 and December 11, 2024.

27. Plaintiff provided Defendant's representative with specific details supporting his dispute of the unauthorized electronic fund transfers.

28. Defendant did not reply to any of the disputes sent by Plaintiff.

**Defendant's Unreasonable Reinvestigation of the Unauthorized Transactions**

29. Defendant never replied to the three disputes mailed to it.

30. On or about August 26, 2025, Plaintiff conducted a merchant call with Defendant to confirm whether they refunded the transactions he disputed. When Plaintiff asked whether there were any refunds from November to today, the representative said there was no credit from Defendant in that time frame.

31. Defendant has failed to credit Plaintiff the unauthorized electronic transfer of funds in connection with the Unauthorized Transactions.

32. Defendant has not conducted a sufficient investigation relative to the unauthorized electronic funds transfers complained of by Plaintiff.

33. Defendant has not sufficiently reported the result of any putative investigation it conducted relative to the unauthorized electronic funds transfer complained of by Plaintiff.

34. Defendant has failed to provide Plaintiff with all documentation and evidence considered in the reinvestigation of his dispute regarding the unauthorized electronic fund transfers, as required. This thereby left Plaintiff baffled and confused by the erroneous investigation results provided by Defendant.

35. Defendant has not issued Plaintiff a credit for the funds electronically transferred in connection with the Unauthorized Transactions from Plaintiff's Account.

36. Defendant never provided Plaintiff with notice that he is entitled to request the documents or information utilized in coming to the conclusion that Plaintiff authorized the disputed electronic fund transfers.

37. Defendant failed to conduct any reasonable investigation.

38. Defendant's reasoning for rejecting Plaintiff's claim was that the card was present for transaction(s) which were not disputed in the same area. This reasoning is nonsensical as the Unauthorized Transactions seem to be all electronic transfers through applications such as Zelle and CashApp which do not require the physical card to be present at the time of the transaction.

39. Upon information and belief, Defendant had ready access to information that would prove the transactions resulted from fraud.

40. Defendant did not make a good faith investigation of the unauthorized electronic

fund transfers in connection with the Unauthorized Transactions.

41. Defendant did not have a reasonable basis for believing that the electronic fund transfers from Plaintiff's Account were not fraudulent.

42. Defendant did not have a reasonable basis for believing that the contents of Plaintiff's dispute were inaccurate.

43. Defendant was unreasonable in concluding that Plaintiff made the disputed electronic fund transfers with the information then available to it.

44. Defendant knowingly and willfully concluded that the electronic fund transfers from Plaintiff's Account were authorized by Plaintiff when such a conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

45. Presently, Plaintiff remains without the total amount of over $12,000.00 electronically transferred from Plaintiff's Account in connection with the Unauthorized Transactions.

46. Defendant has imposed liability on Plaintiff for the entirety of the disputed transactions totaling over $12,000.00.

47. Plaintiff is neither legally responsible for nor obligated to pay the over $12,000.00 transferred from Plaintiff's Account.

48. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant herein.

49. At all times pertinent hereto, the conduct of Defendant, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent, and in utter disregard for federal law and the rights of Plaintiff herein.

50. The Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the EFTA to lower its costs. Accordingly, the Defendant's violations of the EFTA are willful.

51. As a direct and proximate result of the foregoing, Plaintiff suffered out of pocket damages of at least over $12,000.00 from his account, a sum of money that, for Plaintiff is material.

52. Furthermore, Plaintiff has been profoundly impacted by this issue, both emotionally and physically.

53. Plaintiff is currently struggling with depression, anxiety, and constant worry about meeting his financial obligations, which has severely disrupted his sleep. The entire experience has been deeply traumatic for him.

54. The financial setback has left him in a persistent state of panic—especially at night—resulting in anxiety attacks and frequent episodes of crying out of fear of losing everything. He feels emotionally depleted and mentally exhausted.

55. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his depository funds; out of pocket losses; the expenditure of substantial time and money disputing and trying to alert the Defendant to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing and trying to have his funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. §§ 1693, *et. seq.* (EFTA)**
**Violation of the Electronic Fund Transfer Act and Regulation E for Failure to Comply with Error Resolution Procedures**

56. Plaintiff re-alleges and incorporates by reference the allegations set forth in

preceding paragraphs as if fully stated herein.

57. Defendant is a financial institution subject to the requirements of the EFTA.

58. Plaintiff's Account at issue was established primarily for personal, family, or household purposes. 12 CFR 1005.2(b)(1).

59. Plaintiff notified Defendant several times of the error in Plaintiff's Account in the form of unauthorized electronic fund transfers from the aforementioned account.

60. The aforementioned electronic fund transfers were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

61. Defendant was required to initiate a good faith investigation upon notice.

62. Additionally, because the alleged error was an unauthorized EFT, Defendant bore (and bears) the affirmative burden of proof to definitively establish that the EFT was authorized under 15 U.S.C. § 1693g(b). See also, 83 Federal Register 6364, 6382 (Feb. 12, 2018).[1]

63. Defendant did not conduct any reasonable and/or good-faith investigation in response to Plaintiff's disputes.

64. Defendant's actions were knowing and willful and in bad faith.

65. Defendant's conduct was in violation of 15 U.S.C. § 1693f(a).

66. Defendant's conduct was in violation of 15 U.S.C. § 1693f(d).

67. As a direct and proximate result of the foregoing, besides any damages above and the cost of this action (all of which are available for any EFTA violation), Defendant is liable for treble damages pursuant to 15 U.S.C. § 1693f(e)(1) and (2).

68. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage

---

[1] Absent the burden of proof, the obligation to act in good faith, and to back any determination by a reasonable basis in fact, any financial institution could simply conduct a cursory or conclusory "investigation," deny the claim, and avoid any loss to itself.

by loss of ability to purchase and benefit from his depository funds; the expenditure of time and money disputing and trying to alert Defendant to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing and trying to have his funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

69. As a result of each and every violation of the EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## COUNT II
### Common Law Conversion

70. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

71. At all relevant times, Plaintiff was entitled to the exclusive use, possession, and enjoyment to credit from Defendant into his Account.

72. Defendant did not have the present right to use, take possession of, or withhold credits from his Account.

73. By unlawfully refusing to permanently credit the funds back to Plaintiff, Defendant intentionally invaded, interfered with, and deprived Plaintiff of the use, possession, and enjoyment of his property without claim of right, and substantially intermeddled with Plaintiff's property without claim of right.

74. As a result of Defendant's unlawful conversion of the funds, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT III
### Violations of the North Carolina Unfair and Deceptive Trade Practice Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1(a)

75. Plaintiff repeats and realleges the foregoing allegations as if set forth in full herein.

76. Defendant extensively advertises that it will provide assistance to consumers should

they encounter fraudulent transactions in their accounts and that they will investigate fraud claims and provide provisional and permanent credit to its customers.

77. Defendant advertises its fraud assistance and investigations but does not conduct any reasonable investigation. Thus, its advertising is deceptive and unfair.

78. Defendant's practice of conducting bad-faith, unreasonable investigations is unfair, immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

79. Defendant's investigation, or lack thereof, was egregiously deficient in that Defendant's determination was based on non-sensical findings which contradicted the nature of the transactions. The Unauthorized Transactions were also apparently the result of fraud.

80. Defendant's unfair acts and practices caused Plaintiff injury in that Plaintiff could not get credited for the Unauthorized Transactions from Plaintiff. Plaintiff would have been credited for the Unauthorized Transactions if Defendant conducted a good-faith, reasonable investigation.

81. Thus, Defendant violated the UDTPA.

82. The Court should allow Plaintiff to recover treble damages and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant converted Plaintiff's funds to its own by withholding credits from Plaintiff;

ii. Awarding punitive damages for violating common law;

iii. Determining Defendant violated UDTPA;

iv. Awarding Plaintiff treble attorneys' fees, costs, and treble damages under the UDTPA;

v. Determining that Defendant negligently and/or willfully violated the EFTA;

vi. Awarding Plaintiff actual, statutory, and punitive damages as provided by the EFTA;

vii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the EFTA; and,

viii. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: November 21, 2025

*/s/ Leonard A. Bennett*
Leonard A. Bennett, NCSB #21576
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com

*Attorneys for Plaintiff,*
*Daniel Lee Sox Jr.*
